IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTHONY LOVESAY,

       Petitioner,

   v.                             Case No. 2:05-cv-115
                                      JUDGE SMITH
PAT HURLEY,                    MAGISTRATE JUDGE KING

       Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**  Petitioner's requests for discovery and for an evidentiary hearing are **DENIED.**

## I.  FACTS

This case involves the following facts, as summarized by the Fifth District Court of Appeals:

> The facts indicate that on March 27, 2002, Shannon McGath, a juvenile, had attended a party at which she consumed an excessive amount of alcohol and used marijuana. The deceased victim, Dawit Mamo, was present at such party. Due to her consumption, Ms. McGath slept over at Mamo's residence rather than returning home after the party. In the morning, she awoke to find her panties missing and believed that Mamo had had sex with her while she slept. A few days later, she told her brother, Sean McGath, also a juvenile, what she thought had occurred.
>
> Appellant, the boyfriend of Ms. McGath, learned of this a few days later.
>
> Appellant and Sean McGath argued with the victim at another party. They, Appellant and Sean, then returned home (Appellant was

residing at the McGath residence). The two went back to the party and confronted Mamo in the parking lot at the apartment of the party's location.

At such time, the victim was stabbed in the abdomen and heart, the latter being ultimately fatal.

Witnesses observed only the positioning of Appellant and Sean McGath, but not the actual stabbing.

Both Appellant and Sean McGath were arrested. The latter provided a statement naming Appellant as the perpetrator and informed the police as to the creek where Appellant's knife had been thrown. It still contained Mamo's blood.

Sean McGath agreed to testify in accordance with his statements concerning the events and guilt of Appellant.

In exchange, all charges were dismissed against Sean McGath.

Appellant was indicted on one count of aggravated murder, two counts of murder and one count of tampering with evidence.

Certain evidence of a threat, allegedly made by Sean McGath to a witness, was excluded at one point in the trial as inappropriate in the manner attempted.

Some testimony by medical experts for the State and Appellant indicated that the fatal wound was probably caused by a single edge blade.

Sean McGath often carried a butterfly knife, while that of Appellant was a single edge decorative knife.

At the conclusion of the presentation of evidence, the State requested a charge on complicity to each of the murder charges. Appellant objected, but such charge was given.

The jury convicted Appellant of one count of complicity to commit aggravated murder, two counts of complicity to commit murder, one count of felonious assault and one count of tampering with evidence, after which Appellant was sentenced.

Exhibit F to Return of Writ.

## II. PROCEDURAL HISTORY

Petitioner was indicted by the 2002 term of the Fairfield County grand jury on one count of aggravated murder, in violation of 2903.01(A), two counts of murder, in violation of §2903.02(A), (B), and tampering with evidence, in violation of O.R.C. §2921.12(A)(1). Exhibit A to Return of Writ. While represented by counsel, petitioner proceeded to jury trial and, on October 29, 2002, was found guilty as charged. On December 2, 2002, petitioner was sentenced to an aggregate term of life with parole eligibility after twenty years. Exhibits B and C to Return of Writ. Represented by the same attorneys, petitioner filed a timely appeal of his convictions to the Fifth District Court of Appeals. He asserted the following assignments of error:

> 1. The trial court erred in instructing the jury on complicity liability, thereby depriving appellant of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
>
> 2. The trial court erred in prohibiting appellant from introducing evidence that a government witness threatened an eyewitness to the murder, thereby depriving appellant of his right of confrontation and right to due process of law as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
>
> 3. The trial court erred in refusing to instruct the jury that a government witness's threats to an eyewitness could reflect consciousness of guilt, thereby depriving appellant of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
>
> 4. The trial court erred in overruling appellant's motion for a mistrial where extra security measures were visible to the jury and impaired juror impartiality, thereby depriving appellant of his right to a fair trial and due process of law as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

3

5. The trial court erred in entering a judgment of conviction and thereby deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of the charged offenses.

6. The trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding appellant guilty, as the verdicts for the charged offenses were against the manifest weight of the evidence.

7. The trial court erred in admitting an irrelevant and unfairly prejudicial photograph of the decedent, thereby depriving appellant of his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

8. The trial court erred in repeatedly admitting hearsay testimony by government witnesses, thereby depriving appellant of his right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

Exhibit D to Return of Writ. On April 23, 2004, the appellate court affirmed the judgment of the trial court. Exhibit F to Return of Writ. Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court, in which he raised the same propositions of law, with the exception of his prior argument that his convictions were against the manifest weight of the evidence. Exhibits G and H to Return of Writ. On September 1, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit J to Return of Writ.

On February 3, 2005, represented by counsel, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

4

1.  The trial court erred in instructing the jury on complicity liability.

2.  The trial court erred in prohibiting petitioner from introducing evidence that a government witness threatened an eyewitness to murder.

3.  The trial court erred in refusing to instruct the jury that a government witness' threat to an eyewitness could reflect consciousness of guilt.

4.  The trial court erred in admitting hearsay evidence.

5.  The trial court erred in denying petitioner's motion for a mistrial, where extra security measures were visible to the jury and impaired juror impartiality.

6.  The trial court erred in convicting petitioner where such convictions were against the manifest weight of the evidence.

7.  The trial court erred in convicting petitioner where the State failed to offer sufficient evidence to prove each element of the charged offenses beyond a reasonable doubt.

8.  The trial court erred in admitting irrelevant and unfairly prejudicial photographic evidence of the victim.

It is the position of the respondent that all of petitioner's claims are without merit.

### III.  CLAIM ONE

In claim one, petitioner asserts that he was denied a fair trial because the trial court instructed the jury on complicity to commit murder pursuant to O.R.C. §2923.03, despite the prosecutor's argument at trial that petitioner was the sole and principal offender responsible for the death of Dawit Mamo.  Petitioner further alleges that the trial court's jury instruction on complicity to commit murder deprived him of fair notice of the charges.

The state appellate court rejected this claim as follows:

5

The First Assignment of Error asserts that the charge as to complicity over Appellant's objection, contrary to the charges of the indictment, was erroneous and denied Appellant a fair trial. We disagree.

R.C. 2923.03(A) and (B) provide:

"A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense.

"(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender."

The Ohio Supreme Court in *State v. Perryman* (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, stated:

"When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper."

In *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, the United States Supreme Court held:

"Where Ohio Supreme Court's construction of complicity provision of statute under which defendant was convicted was consistent with both prior Ohio law and with legislative history of statute, interpretation of provision did not deprive defendant of fair warning of crime with which she was charged. R.C. Ohio § 2923.03(A).

"Petitioner's contention that the Ohio Supreme Court's interpretation of the complicity provision of the statute under which she was convicted was so unexpected that it deprived her of fair warning of the crime with which she was charged, is without merit. The court's construction was consistent with both prior Ohio law and the statute's legislative history. "P. 2961."

6

"Constitution does not prohibit states from enacting felony-murder statutes or from making aiders and abettors equally responsible, as a matter of law, with principals. (Per Mr. Chief Justice Burger with three Justices concurring and three Justices concurring in the judgment.)"

This court determined in *State v. Duering* (1971), 25 Ohio App.2d 103, 266 N.E.2d 851:

"Where an indictment fails to indicate that the defendants were aiders and abettors, but such claim is brought out on trial, it is not error for the court to charge the jury on aiding and abetting in the absence of a bill of particulars expressly excluding that claim.

"Statute providing that any person who aids, abets, or procures another to commit an offense may be prosecuted and punished as if he were the principal offender means literally what it says."

Also, in *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, it is stated:

"To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal; such intent may be inferred from the circumstances surrounding the crime. R.C. § 2923.03(A)(2)."

*State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, provided:

"Under R.C. 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense."

We must examine the record in this case to determine if sufficient evidence was presented to make Appellant aware that a charge on complicity was warranted even though such was absent from the indictment.

Appellant's defense that he was not the perpetrator of the offense of murder was never to the effect that some unknown person committed

the act, but that Sean McGath, who was initially also charged, was the guilty party.

In this regard, Appellant stressed the fact that both the expert witnesses for the State and Appellant rendered opinions that a single edged knife did not cause the fatal wound, but rather a double edged knife such as the butterfly knife Sean McGath may have possessed made such wound.

The evidence before the jury, if believed, additionally provided that Appellant and McGath were the only ones present at the time of the stabbing, that Appellant, a left hander (Tr. 400), had his right hand on the victim's shoulder, that McGath was not in arms length of the victim (Tr. 300), that the victim's blood was on Appellant's knife (stipulation, Tr. 607) and sweatshirt (Tr. 635) and that Appellant wanted to kill the victim (TRr.627).

Also, the assertion as to the State's expert as to a double edged knife causing the fatal wound is not totally accurate.

He stated at Tr. 400 that he did not remember saying it was a single edged blade. Also, at Tr. 402, he stated it was more likely a single edged blade was involved. But at Tr. 403-404, he stated with the slit-like wound, he could not tell. And at Tr. 405, he said he would not exclude a dagger type if one side was sharper. At Tr. 406, he stated that the prior surgeon's probing could have changed the wound.

Also, the jury had before it that both Appellant and McGath fled the scene. Such may constitute consciousness of guilt as to either or both. *State v. Eaton* (1969), 19 Ohio St.2d 145, 249 N.E.2d 897, *State v. Vance* (April 4,1994), Knox App. 92-CA-33, unreported (5th Dist).

Of course a jury has the responsibility to determine the credibility of the witnesses, including experts and may accept all or any part thereof of their testimony. *State v. Jamison* (1990), 40 Ohio St.3d 182.

We find that the efforts to indicate the appropriate perpetrator as Sean McGath while the evidence indicated Appellant acted either as principal or as participant was sufficiently created by Appellant's defense to apprise him that the charge of complicity, while not contained in the indictment, was warranted and that no surprise preventing a fair trial or affected Appellant's constitutional rights to such occurred.

8

We therefore reject the First Assignment of Error.

Exhibit F to Return of Writ.

The factual findings of the state court are entitled to a presumption of correctness pursuant

to 28 U.S.C. §2254(e):

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to

clearly established federal law or was based on an unreasonable determination of the facts of record:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Upon review of the entire record, this Court concludes that petitioner has failed

to establish that the findings of the state appellate court are so unreasonable as to justify federal

habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they

deprive petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see*

*also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69

9

(6th Cir. 1983). A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law. *Henderson*, 431 U.S. at 155.

Petitioner argues that the state court's decision constitutes an unreasonable determination of the facts, because petitioner argued at trial that Sean McGath was solely responsible for killing Mamo. However, as noted by the state trial court in overruling petitioner's objection to the jury instruction on complicity, in view of the evidence presented, this defense necessarily raised an issue regarding petitioner's involvement as an aider and abettor:

> The evidence seems to be without really contradiction that on the date in question, that Sean McGath and the Defendant were involved in a couple of heated arguments with the decedent over this alleged sexual incident with the Defendant's girl friend and Sean McGath's sister. Everyone testified to that. In addition, all the witnesses testified that this Defendant, along with McGath, left their residence on two different occasions to go over and to confront the decedent in this case over this incident. And, in fact, McGath's testimony is that on one occasion, the Defendant indicated he was going over there to kill the decedent and that he had a knife, a dagger, and that's what weapon was used.
>
> There's other witnesses who testified that the three of them were standing there at the car – that is, the decedent and Mr. McGath and the Defendant, Mr. Lovsey – and that's when he was stabbed resulting in this death.
>
> So the bottom line on this is that the Defense has essentially asserted that their client didn't do it, and, therefore, by elimination, Mr. McGath must have done it. There is no doubt that one or the other inflicted the fatal blow.
>
> In addition, there's physical evidence that the decedent received two wounds, a superficial wound to the stomach area, abdomen area, and a fatal wound to the heart. The evidence also indicates there's blood on the dagger which has been established as the property of the

10

> Defendant, along with blood.  So the Court thinks it would be reasonable to charge on the theory of complicity.  These two men were acting together.  They definitely went over with the idea of confronting [sic].  Mr. McGath says just to beat up the decedent in this case.  And we know one or the other killed the decedent.
>
> So the Court feels that to prevent a failure of justice, the complicity, depending on how the jury decides the facts, is appropriate in this case....

*Transcript,* at 792-93. Moreover, the United States Court of Appeals for the Sixth Circuit has

> expressly acknowledged that a defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process.  *Stone v. Wing,* 416 F.2d 857 (6th Cir. 1969).

*Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986).  Thus, the jury instructions on complicity neither denied petitioner a fundamentally fair trial, nor deprived him of fair notice of the charges against him.

Claim one is without merit.


## IV.  CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court prohibited him from introducing evidence that Sean McGath threatened to "stick" Josh Mitchell, an eyewitness to the murder, who testified against petitioner at trial.

The state appellate court rejected this claim as follows:

> The Second Assignment of Error questions the court decision as to testimony as to a threat by Sean McGath to a witness.

11

Contrary to such assertion, the court did not prevent such evidence.

At Tr. 524-525, it is clear that the court determined that such purported threat could not be introduced through the cross-examination of Sgt. Portier, but that Appellant's counsel not only already indicated it to the jury but could inquire of it when Sean McGath testified. Since Mr. McGath testified, the opportunity to inquire as to such threat was present. Appellant's counsel was therefore not prevented from so inquiring. The Second Assignment of Error is rejected.

Exhibit F to Return of Writ.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)*; see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). Such are not the circumstances here. Further, as noted by the state appellate court and contrary to petitioner's allegations here, petitioner could have called Sergeant Portier to testify regarding the police report at issue after Sean McGath denied making any threat, but did not do so:

COURT: If Sean McGath takes the stand and you want to get into if he intimidated other people to attack his credibility, you want to call him to verify there was a report, fine. But at this point, it doesn't —
***
COURT: ... I don't think this is the appropriate time for this. I'm not saying you can't bring this up to attack the credibility of McGath. I think it's fair game for that. But not at this point.

***

12

> ... [T]he Court's not saying you can't bring this information out to attack the credibility of Mr. McGath or to show his motive, from your point of view, of telling the truth. I think that's all fair game, but I don't think it's appropriate at this time to get into using the report, which he doesn't know the truth of that or not. He got a report. You're just asking him his opinion.
>
> Now, if McGath was to take the stand and deny that he ever made threats and so forth, I think you can get into that.

*Transcript*, at 527-28.

Claim two is without merit.

## V.  CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial because the trial court refused

the following jury instruction, which was requested by petitioner:

> You have heard the testimony that Sean McGath made a threat to a potential witness in this case to prevent the witness from testifying. If you believe that such a threat was made, you may consider this threat as Sean McGath's consciousness of guilt.

*Petition*, at 14.

The state appellate court denied this claim as follows:

> We must reject the Third Assignment of Error due to the fact that even though we agree that threats may indicate consciousness of guilt, Appellant failed to pursue the aspects of the threat when Sean McGath testified even though the Court provided such opportunity. On redirect, after being advised and waiving his constitutional rights as to potential self incrimination, Sean McGath testified (Tr. 692) that he only told Joshua Mitchell that he would beat him up if he didn't tell the truth. Nothing further as to the threat was developed thereafter.

13

> A challenge to a single jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. *State v. Hardy* (1971), 28 Ohio St.2d 89, 276 N.E.2d 247; *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772. Accordingly, the proper standard of review for an appellate court is whether the trial court's refusal to give a party's requested instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

> In Ohio, it is well established the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 348 N.E.2d 135. Here, the evidence was lacking and the ruling proper.

Exhibit F to Return of Writ.

Petitioner again asserts that the state appellate court's decision constitutes an unreasonable determination of the facts, because the state appellate court failed to recognize Mitchell's testimony that Sean McGath had threatened him, despite McGath's denial of making any threat. This Court does not agree. Although the state appellate court did not discuss Mitchell's testimony in its dismissal of petitioner's claim, the appellate court stated that because "nothing further as to the threat was developed" after McGath testified, the "evidence was lacking" and the trial court's refusal to issue the requested jury instruction was "proper." *See id.* Further, the record reflects that the trial court acknowledged Mitchell's testimony when it denied petitioner's requested instruction:

> It's been brought out that he allegedly made a threat, Mr. McGath did, to Mr. Josh Mitchell.... He testified to it on the stand. The Court doesn't feel that there's any special charge needed there. This is a matter of credibility. It goes to McGath's credibility. It was brought out and the defense was given the opportunity to question him about

14

that and also to bring in additional witnesses if they wished to establish this business about the threat, which they declined to do.

Also, the Court is going to give a charge requested by the defendant on the issue of an informant and basically instructing the jury to give such testimony grave concern when they consider it. And the Court thinks that's appropriate and would satisfy the matter of raising... the credibility of Mr. McGath, which is for the trier of the fact, the jury in this case to decide. They have it before them. They'll be instructed on that, to give it special caution, which the Court thinks would be fair enough, and it sees no need to give an instruction so we'll overrule your request for that.

*Transcript,* at 794-95. The trial court instructed the jury:

Credibility: To determine the credibility of witnesses, you will apply the tests of truthfulness which you are accustomed to apply in your daily lives. You may consider the appearance of the witness upon the stand; the manner of testifying; the reasonableness of the testimony; the opportunity each witness had to see, hear and know the things concerning which he testified; accuracy of memory; frankness or lack of it; intelligence; interest and bias, if any; together with all the facts and circumstances surrounding the testimony. Applying these tests, you will assign to each witness such weight as you deem proper.

*Id.*, at 855-856.

The testimony of an informant that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion and require that it be weighed with great caution.

It is for you as jurors in light of all the facts presented to you from the witness stand to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

15

> The testimony of an informer who provides evidence against a defendant for pay or for immunity from punishment or for personal advantage or vindication must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or by prejudice against the defendant.

*Id*., at 880-881.

Petitioner simply has failed to demonstrate that he was denied a fair trial because the trial court refused to instruct the jury that evidence of a threat reflected consciousness of guilt.

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal... . The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S., at 147, 94 S.Ct., at 400, 38 L.Ed.2d 368, not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at 146, 94 S.Ct., at 400.
>
> In this case, [petitioner's] burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give [a requested jury instruction]. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.

*Henderson v. Kibbe, supra*, 431 U.S. at 154. Petitioner has failed to meet this standard.

Claim three is without merit.

## VI. CLAIM FOUR

In claim four, petitioner asserts that he was denied a fair trial by reason of the admission of hearsay evidence. The state appellate court denied this claim as follows:

16

The Eighth Assignment of Error states that admission of hearsay testimony prejudicially affected the outcome of the trial, thereby depriving Appellant of a fair trial.

There are seven asserted hearsay admissions referenced by this Assignment. One objection at Tr. 430 was sustained and is therefore disregarded.

The remaining will be discussed.

The first at Tr. 268 involved asking Justin Springsteen as to an argument which he overheard among the victim, Appellant, Sean McGath and Shannon McGath outside Mike Kinser's apartment, preceding the death of Mr. Mamo. He was asked what the argument was about.

The objection, as stated, was based on hearsay, while the State chose to identify it as an excited utterance.

The court, in its ruling, determined that the response was not as to the truth of the content of the argument and therefore not hearsay.

While we have doubts as to the response qualifying as an excited utterance, the exception as to present sense impression or state of mind under Evid. Rule 803(1), (3) would be applicable.

In addition, we must view this scenario in the context of events before the jury.  The allegations of sexual misconduct of the victim were communicated to Sean McGath and to Appellant by Shannon McGath (Tr. 420-422) and as the basis for the anger at Mr. Mamo (Tr. 423). No objection to this testimony occurred. We agree with the court's ruling as to admissibility.

The objection at Tr. 484 is as to the statement made to Collett Smith that Sean and Appellant were at Kinser's apartment. This objection is without merit as such facts had been presented to the jury.

17

The objection on Tr. 488 relates to which persons wanted to return to Kinser's apartment. It does not involve objectionable hearsay but a state of mind.

The reference to hearsay on Tr. 507 is as to whether anything the witness said caused concern to Shannon. It does not ask as to the content of statements but as to whether he observed an emotional response and is not objectionable.

The objection at Tr. 509 was as to the anticipated statement as to the stabbing of the victim. This clearly would meet the excited utterance exception and is not objectionable.

The Tr. 585 objection is not as to a statement but as to the results of the police investigation resulting in locating the Appellant's knife and is not hearsay. Of course, the Appellant stipulated that Mamo's blood was on it. (Tr. 607).

While there are many disagreements among attorneys and courts as to what constitutes hearsay and the application of the many exceptions, the ultimate determination of admissibility is within the sound discretion of the court and the determination of prejudicial effect, if any.

We find that, under the evidence presented, not only were the objections not well taken, but were not prejudicial.

The Eighth Assignment of Error is rejected.

Exhibit F to Return of Writ.

Again, the decision of the state appellate court is entitled to a presumption of correctness pursuant to 28 U.S.C. §2254(d), (e).  Review of the record reflects that petitioner has failed to establish that the state appellate court's decision is so unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra.*

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). On March 8, 2004, during the time that petitioner's appeal was pending,[1] the United States Supreme Court overruled *Ohio v. Roberts*, 448 U.S. 56 (1980), and redefined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held, in *Crawford v. Washington*, 124 S.Ct. 1354 (2004), that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination. *Id.*, at 1366:

> Where testimonial evidence is at issue... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

The Court declined to spell out a comprehensive definition of the term "testimonial," but stated that, at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id*.

A casual remark to an acquaintance, business records and statements made in furtherance of a conspiracy do not constitute testimonial statements subject to the strictures of the Sixth

---

[1] The United States Court of Appeals for the Sixth Circuit has held that *Crawford* is not retroactively applicable. *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). This Court need not consider the issue, however, since none of the statements complained of were prejudicial to petitioner.

Amendment. *Id.*, at 1364, 1367.  "Where nontestimonial hearsay is at issue, it is wholly consistent

with the Framers' design to afford the States flexibility in their development of hearsay law--as does

*Roberts*, and as would an approach that exempted such statements from Confrontation Clause

scrutiny altogether."  *Crawford v. Washington, supra*, 124 S.Ct. at 1374.  A violation of the

Confrontation Clause is subject to harmless error analysis.  *Stapleton v. Wolfe,* 288 F.3d 863, 867

(6th Cir. 2002)*; Calvert v. Wilson*, 288 F.3d 823, 832-33 (6th Cir. 2002).

> For purposes of federal habeas corpus review, a constitutional error
> that implicates trial procedures is considered harmless unless it had
> a "substantial and injurious effect or influence in determining the
> jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710,
> 123 L.Ed.2d 353 (1993). This standard of review requires the
> reviewing court to examine the effect of the error on the jury rather
> than the sufficiency of the evidence at trial.

*Calvert v. Wilson*, 288 F.3d at 833.

Petitioner asserts that he was denied his right to confront witnesses because Justin

Springfield testified that he heard petitioner, Mamo, and Sean and Shannon McGath arguing "about

Dawit [Mamo] having sex with Shannon." *Transcript*, at 271.  As noted by the state appellate court,

such evidence was merely cumulative to the testimony of Shannon McGath.  *Id.*, at 420-423.

Petitioner also complains of that Collet Smith testified:  "We told Shannon that Tony and

Sean were at the apartment." *Id.*, at 484.

> Q.  Who wished – when you were at Shannon McGath's house with
> Collett, who wanted to go back to the apartment?
>
> A.  Shannon McGath.

*Id.*, at 488.

> Q.  Did you say anything during your conversations with Shannon...
> that caused her any concern?
>
> [Objection overruled.]
>
> A.  Not that I know of.  I don't think so.

*Id.*, at 507.

> Q.  What [did] Justin [say] when he came up to you[?]
>
> A.  He had just said that Dawit got stabbed....

*Id.*, at 508-510.  Petitioner also complains that Detective Delp testified as follows:

> Based on an interview with Sean McGath, he gave me information
> which led me to believe the knife would be located somewhere near
> the area where I found it.

*Id.*, at 586-587.[2]   All such statements either did not constitute hearsay, were cumulative to other

evidence, or simply do not appear to have been prejudicial to petitioner, particularly in view of other

evidence that was presented.  Thus, even assuming that admission of such statements was erroneous,

any error would have been harmless.  *See Calvert v. Wilson*, *supra*, 288 F.3d at 833.

Claim four is without merit.

## VII.  CLAIM FIVE

In claim five, petitioner asserts that he was denied a fair trial because he was repeatedly seen

by the jury being escorted from the courthouse across the street to the jail in shackles and with one

---

[2]  Sean McGath testified that he was with petitioner when petitioner threw the knife used
to kill Mamo into a creek near McGath's house.  *Id.*, at 634.

or more law enforcement officials, even though there is no evidence that petitioner was disruptive, dangerous or a flight risk.

The state appellate court denied this claim as follows:

> The Fourth Assignment of Error is predicated on the possibility of at least one juror having observed Appellant in shackles while being transported between the courtroom and the jail. Appellant moved for a mistrial after presentation of the evidence but did not desire a *voir dire* of any member of the jury (Tr.796) nor a curative instruction. (Tr. 796).

> Also, while Appellant's counsel indicated to the court that Appellant's family members were available to testify as to these observations, none were called nor a request that they be called to provide such information. While the court, in denying the motion for mistrial made the assumption that such may have occurred, nothing in the record so indicates. For purposes of this Court's review of the claim, we are limited to the record rather than joining in the assumption but if we also choose to assume, the Ohio Supreme Court, in the capital murder case of *State v. Nields*, 93 Ohio St.3d 6, 752 N.E.2d 859, stated:

> "Trial court's failure in capital murder case to conduct a hearing or issue curative instruction upon learning that several jurors saw defendant in shackles just before closing arguments in mitigation phase did not deny defendant a fair trial; defendant simply asserted he was prejudiced by that incident without demonstrating prejudice, and risk of prejudice was slight in any event, considering that jurors' view of defendant in custody was brief, inadvertent and outside the courtroom."

> We disagree with Appellant's conclusions as to this Assignment of Error as no prejudice has been shown and, with no *voir dire* of any juror member, the possibility of any prejudicial effect would again be based on an unwarranted conclusion.

> Appellant's Fourth Assignment of Error is overruled.

22

Exhibit F to Return of Writ.  Again, the findings of the state appellate court are presumed to be correct.  28 U.S.C. §2254(e).  Contrary to petitioner's allegations here, nothing in the record supports petitioner's claim.

> Generally, a criminal defendant "should not be compelled to go to trial in prison or jail clothing because of the possible impairment" of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial. *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). This holding extends to a defendant's appearance in handcuffs and shackles....

> Exposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so "inherently prejudicial" as to deny the defendant's constitutional right to a fair trial. *United States v. Pina*, 844 F.2d 1, 8 (1st Cir.1988). We have distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse. Defendants are required to show actual prejudice where "[t]he conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial." * * *

*United States v. Waldon*, 206 F.3d 597, 607 (6th Cir. 2000).  Petitioner cannot meet this standard here.  Further, neither *Deck v. Missouri*, – U.S. –, 125 S.Ct. 2007, 2010 (2005)(Constitution prohibits routine use of visible shackles during guilt phase of criminal trial), nor *Ruimveld v. Birkett*, 404 F.3d 1006, 1008 (6th Cir. 2005), referred to by petitioner, is applicable here, as both cases involved the use of visible shackling during trial.  No such allegations are raised here.

Claim five is without merit.

## VIII.  CLAIMS SIX and SEVEN

In claim six, petitioner asserts that his convictions are against the manifest weight of the evidence.  In claim seven, petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions.

The state appellate court rejected these claims as follows:

> The Fifth Assignment of Error questions the sufficiency of proof to support each required element of the offenses before the jury. We disagree.
>
> On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks* (1991) 61 Ohio St.3d 259, 574 N.E.2d 492. The weight to be given evidence and the determination of credibility of witnesses are issues for the jury, not the reviewing court. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, *certiorari denied*, 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183.
>
> In viewing the evidence most favorably to Appellant as required by *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, we find that sufficient evidence was presented to the jury for a determination of the guilt of Appellant either as the primary offender or as complicit. Appellant and Sean McGath were angry at Mr. Mamo, they returned to his location, confronted him, his blood was on the Appellant's knife, both fled, the knife was discarded, the victim's blood was on Appellant's clothing, in addition to those matters of evidence heretofore reviewed.
>
> We find that sufficient evidence was presented. Appellant's Fifth Assignment of Error is overruled.
>
> The Sixth Assignment of Error as to lack of manifest weight also requires this court to consider the evidence previously referenced.
>
> On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine "whether in

resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717. *See, also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Martin* at 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

Based upon the facts noted *supra*, and the entire record, we do not find the decision was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses.

The Sixth Assignment of Error is rejected.

Exhibit F to Return of Writ.

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

25

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin*, *supra,* 20 Ohio App.3d at 175; *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner does claim that there was constitutionally insufficient evidence to sustain his conviction. Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, *supra*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, at 326). For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction. *Id*.

26

Petitioner asserts that there was no evidence of his intent to kill, and no evidence that he aided or abetted Sean McGath in stabbing Mamo.  This Court does not agree.

O.R.C. §2901.22(A) provides:

> A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Evidence showed that petitioner was angry with Mamo because his girlfriend, Shannon McGath, accused Mamo of raping her.  As a result, petitioner and Mamo argued.  Thereafter, petitioner retrieved a knife from his house.  He returned with Sean McGath to confront Mamo.  He told Sean he wanted to kill Mamo.  Only petitioner and Sean were in a position to have stabbed Mamo, and testimony of eyewitness Joshua Mitchell suggests that it was petitioner, not McGath, who stabbed Mamo.  *Transcript*, at 300-302.  Additionally, Mamo's blood was found on petitioner's knife and clothes.  Petitioner attempted to get rid of the evidence by throwing his knife into a creek.  In view of the foregoing, and for the reasons discussed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence is constitutionally sufficient to sustain petitioner's convictions.

Claims six and seven are without merit.

## IX.  CLAIM EIGHT

In claim eight, petitioner asserts that he was denied a fair trial by reason of the admission of an irrelevant and prejudicial photograph of the victim at his eighteenth birthday party.

27

The state appellate court denied this claim as follows:

> The Seventh Assignment of Error asserts error as to admission of a photograph of the victim.
>
> We consider the admission under an abuse of discretion standard relative to prejudicial effect, if any.
>
> As stated heretofore, in order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. We must look at the totality of the circumstances in the case *sub judice* and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
>
> Often, an objection is made as to repetitive photos or those which portray details of a victim which may be disturbing. Here, however, the autopsy photo of the victim (State's Ex. 4) was exhibited to the jury during trial without objection (Tr. 385-386) and admitted without objection (Tr. 702). This Assignment deals with the photo of Mr. Mamo at age 18 prior to his death. We find that admission of such a photo as State's Exhibit 1 rested in the sound discretion of the court. We find that such photo had sufficient probative and relevant value as to outweigh any danger of material prejudice. Evid. Rules 403, 611(A), *State v. Jackson* (1991), 57 Ohio St.3d 29, 565 N.E.2d 549.
>
> The Seventh Assignment is not well taken.

Exhibit F to Return of Writ.

As previously discussed,

> [g]enerally, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Roe v. Baker*, 316 F.3d 557, 567

28

(6th Cir.2002) (citing *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994)).

*Biros v. Bagley*, – F.3d –, 2005 WL 2173615 (6th Cir. 2005)(admission of gruesome photographs of murder victim did not deprive defendant of a fundamentally fair trial). The error complained of does not rise to this standard here.

Claim eight is without merit.

## X.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

29

*de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

September 19, 2005                                    *s/Norah McCann King*
                                                     Norah M<sup>c</sup>Cann King
                                                     United States Magistrate Judge